In the Matter of the Application of JACOB J. CUMMINGS and ETHEL CUMMINGS, Petitioners, for an Order against EDWARD WEINFELD, State Commissioner of Housing, Respondent, and KNICKERBOCKER VILLAGE, INC., Intervenor, Respondent.

Supreme Court, Special Term, New York County, September 19, 1941.

*Nathan Dambroff*, for the petitioners.

*John J. Bennett, Jr., Attorney-General* [*John F. X. McGohey, Assistant Attorney-General,* of counsel], for the respondent.

*Kenneth C. Newman*, for the intervenor, respondent.

PECORA, J. This is an application under article 78 of the Civil Practice Act to annul the determination of the State Commissioner of Housing that he is without jurisdiction to compel the Knickerbocker Village, Inc., to renew the lease of petitioners, and to direct the respondent to compel renewal of the lease by the intervenor-respondent. A cross-motion has been made to dismiss the petition on the ground that it does not state facts sufficient to entitle petitioners to the relief asked.

It is alleged that petitioners are lessees of an apartment owned by the intervenor Knickerbocker Village, Inc., a public limited dividend housing corporation organized under the State Housing Law; that the lease is shortly to expire; and that the petitioners have been refused a renewal of the lease. It is further asserted that the landlord has failed to give any reason for declining to renew the same. Petitioners also aver that the refusal is actually due to their membership in the Knickerbocker Village Tenants Association, in which they are active; that petitioners believe in the right of tenants to organize, assemble and interchange opinions, and to act together for their common interest. They further allege that the refusal to renew their lease constitutes an unlawful discrimination against them because of their beliefs in that regard, and that such action is in violation of section 223 of the Public Housing Law. Section 223 provides: " Prohibition against discrimination. For all the purposes of this chapter, no person shall, because of race, color, creed or religion, be subjected to any discrimination."

The State Housing Commissioner, acting under the advice of the Attorney-General, made his final determination that he is without jurisdiction to compel the landlord to renew petitioners' lease. He based it on the ground that the word " creed " in section 223 means " religious belief;" and that, therefore, membership and activity in a tenants' organization and belief in the principle of the right of assembly do not constitute a " creed " within the meaning of section 223.

The only question to be determined here is the interpretation of the word " creed " in section 223 of the Public Housing Law. Upon this question both sides have been unable to discover any specific judicial authority to lend aid to the court. The court has accordingly looked to the history and intent of the statute for guidance.

The Public Housing Law was enacted as chapter 808 of the Laws of 1939, and went into effect on June 8, 1939. Its enactment followed shortly after the adoption of the new State Constitution in 1938. Section 11 of article 1 of the State Constitution, in a new section dealing with civil rights, prohibited discrimination on account of " race, color, creed or religion." Prior to the adoption of this provision, our Constitution had no provision against discrimination by reason of race, color or religion. Prohibitions against such acts were, however, contained in the Civil Rights Law. Section 13 of the Civil Rights Law, in providing against disqualification to serve on juries, referred to " race, creed or color;" section 40, dealing with equal rights in places of public accommodation, used the same

words; section 42, in prohibiting discrimination by utility companies, used the expression " race, color or religion." The Revised Record of the New York State Constitutional Convention of 1938 (see vol. 2, p. 1065) indicates clearly that the purpose of the amendment was to incorporate into the Constitution the substance of these provisions of the Civil Rights Law and other statutes, at the same time giving coverage for all phases of religious discrimination which were dealt with in the existing law. It seems obvious that, with this purpose in mind, the drafters of this constitutional provision against discrimination merely adopted all of the words used in the various sections of the Civil Rights Law, thereby formulating the phrase " race, color, creed or religion." The purpose of the declaration was to give protection against racial, religious and color discriminations. Nowhere in the debates is there even the slightest indication that it was intended that the word " creed " embraced any beliefs other than religious beliefs. (New York State Constitutional Convention [Revised Record], pp. 1139, 1142, 1143, 1146, 2626, 2627.)

The text of section 223 of the Public Housing Law was taken bodily from section 11 of article 1 of the State Constitution. It is fair to assume that the Legislature intended to give to that section the same meaning as the constitutional provision. Definitions in dictionaries and in 21 Corpus Juris Secundum (p. 1147) define the word " creed " as " confession or articles of faith * * * formal declaration of religious belief; " " any formula or confession of religious faith; a system of religious belief." (Webster's New Internat. Dict.)

In my opinion the Legislature in section 223 of the Public Housing Law used the words " creed " and " religion " interchangeably. I cannot subscribe to the argument of the petitioners that the word " creed " may refer to any beliefs, be they economic, political or sociological. Viewed in the light of the history of the statute, the evils it intended to cure, and its constitutional forerunner, I hold that " creed " means religious belief. Petitioners do not allege nor do they show any discrimination with respect to any religious belief. The cross-motions to dismiss the petition must, therefore, be granted and petitioners' application denied. Settle order.